H. E. Brooks, Appellant, v. Estate of J. W. Brooks et al., Appellees.

FRAUD: Deception Constituting—Evidence. Evidence reviewed, and held quite insufficient to establish the fraud pleaded.

*Appeal from Des Moines District Court.*—Oscar Hale, Judge.

October 16, 1923.

Action to recover damages for losses sustained through investment in certain bonds which plaintiff alleges he was induced to purchase through the fraud of J. W. Brooks, the original defendant. J. W. Brooks died after the action was commenced and before the trial, and the executors and beneficiaries of his estate were substituted as defendants. The court found for defendants, dismissed plaintiff's petition, entered judgment for costs against plaintiff, and he appeals.—*Affirmed.*

*La Monte Cowles,* for appellant.

*Seerley & Clark* and *W. L. Cooper,* for appellees.

Arthur, J.—I. The form of the petition is "in equity." Features of an equitable action in the petition are negligible. The court, in the course of the trial, denominated the case a law action, and ruled upon the admission and exclusion of evidence, permitting the evidence offered—to which objections

were sustained—to go into the record. It was virtually conceded in argument, on submission of the case, that it is a law action.

In the fall of 1913, appellant purchased bonds of the United Flour Mill Companies, in the amount of $4,500. Early in 1914, plaintiff purchased $4,500 more of said bonds. To make the last purchase, plaintiff borrowed $4,500 from the National State Bank of Burlington, Iowa, and gave his note to the bank therefor, and put up his bonds as security for the loan. The record also shows that, prior to the purchase of the above mentioned bonds, plaintiff had purchased $6,000 worth of the same bonds; but said bonds are not in controversy in this case. The record shows that the two lots of bonds of $4,500 each were disposed of, and the proceeds, in the amount of $5,426.56, deposited in the National State Bank, to the credit of H. E. Brooks, and that, on December 22, 1917, a certificate of deposit was issued to him for same.

On September 3, 1919, this action was begun against J. W. Brooks, to recover the difference between the amount of said bonds so purchased by plaintiff, with interest thereon, and the amount of the certificate of deposit issued to plaintiff by the bank.

II. The petition is the ordinary petition in a case based on fraudulent representations, the material allegations of which are that J. W. Brooks, the original defendant, is the brother of appellant, and vice president of the National State Bank of Burlington, Iowa, and trustee of the Brooks estate, a portion of which belongs to appellant; that appellant, from time to time, received from J. W. Brooks, trustee of the Brooks estate, funds, and was accustomed to consult with J. W. Brooks regarding investments of his money; that, on the 24th day of October, 1913, appellant was at the bank, and met J. W. Brooks, who advised him that he had an opportunity to make a desirable investment, stating that the bonds of the United Flour Mills Companies were being sold at or about par, that the bonds drew 6 per cent interest, and were guaranteed by the Continental & Commercial Bank of Chicago, that he had invested largely in these bonds, and that J. T. Remey, the president of the bank, had invested in these bonds, and that the bank had taken a large

amount of said bonds on its account, and that they were perfectly safe; that appellant had no knowledge whatever of the United Flour Mills Company and of the bonds issued by it, and so told J. W. Brooks, and said to J. W. Brooks that, ''if it is perfectly safe, and guaranteed by the Continental & Commercial Bank of Chicago, I will purchase some of same;'' that at that time he delivered to J. W. Brooks his check on the National State Bank for $4,500, with which J. W. Brooks purchased for appellant $4,500 of the bonds of the United Flour Mills Company, and again repeated to appellant that said bonds were guaranteed by the Continental & Commercial Bank of Chicago, and were absolutely secure; that afterwards, on the 4th day of February, 1914, J. W. Brooks suggested to appellant that he purchase an additional amount of said bonds, again repeating the statement that said bonds were guaranteed by the Continental & Commercial Bank of Chicago, and were perfectly safe; that appellant stated to J. W. Brooks that he had no money at the time, with which to purchase the bonds; that J. W. Brooks said that he could execute his note to the National State Bank for $4,500, and with the money purchase an additional $4,500 of the bonds; that, acting upon the suggestion and advice of J. W. Brooks, and believing and relying on his statement that the bonds were perfectly safe, and were guaranteed by the Continental & Commercial Bank of Chicago, he borrowed $4,500 from the bank, and gave the money to J. W. Brooks, to purchase the additional $4,500 of bonds; that none of said bonds were delivered to appellant, but were held by J. W. Brooks; that later, without the knowledge or consent of appellant, J. W. Brooks sold and disposed of said bonds, and reported to appellant that the proceeds amounted to $5,426.46, and tendered to appellant a certificate of deposit in the National State Bank, dated December 22, 1917, for said amount; that appellant refused to accept said certificate in full settlement, and demanded the full amount of said bonds, with interest at 6 per cent from the date of purchase. The petition alleges that, ''by the wrongful acts of the defendant, J. W. Brooks, and by the false representations made to him, he was induced to part with his money, and that at no time would he have purchased said bonds or any portion thereof except for the false and fraudulent representa-

tions made to him by the defendant, J. W. Brooks;'' that the sale of said bonds was unauthorized, and without his consent or knowledge; and that, by reason of the ''wrongful acts of defendant and the false statements made, he has been damaged in the sum of $6,693.54, and demands judgment in that amount, with interest.''

An amendment to the petition alleges that appellant relied upon the representations of J. W. Brooks, as alleged in the petition, in the purchase of the whole $9,000 in bonds; and that, if said bonds had been guaranteed by the Continental & Commercial Bank of Chicago, as represented by J. W. Brooks, there would have been no occasion for selling them for less than their face value; that appellant's loss occurred by reason of the fact that J. W. Brooks wrongfully and fraudulently secured from him money, and invested the same in said bonds, when the bonds were not guaranteed by the Continental & Commercial Bank of Chicago, and were not as represented; and that none of said money would have been given to J. W. Brooks for the purchase of said bonds, but for such false and fraudulent representations made by J. W. Brooks, knowing them to be false and fraudulent.

After they were substituted defendants, appellees answered by a general denial.

On the issues thus made, the case was tried. The court dismissed the petition, and entered judgment for costs against plaintiff, from which judgment this appeal is prosecuted.

III.   To sustain his action, evidence was offered by appellant and received, in substance as follows:

Charles E. Brooks, brother of appellant and J. W. Brooks, and an employee of the National State Bank at the time of the transaction involved in this action, testified that J. T. Remey was president of the National State Bank, and J. W. Brooks was vice president of said bank at the time of the transactions involved in this action; that H. E. Brooks was accustomed, from time to time, to consult with J. W. Brooks about the investment of his funds; that he knew of H. E. Brooks' buying, through his brother, J. W. Brooks, in October, 1913, some bonds of the United Flour Mills Company; that he could not say whether he was present at the bank or not at that time, except from his

knowledge of making the entries on the books, which entries he made; that there was a credit for the bonds for $4,500; that there was another transaction later, of $4,500; that he saw the second transaction made; that "what their previous conversation was, I know nothing about, but I was handed a note for $4,500 and the bonds,—I think they [the bonds] were attached to the note as collateral;" that the bonds that were put up as collateral security for the payment of the $4,500 note given by H. E. Brooks to the bank were disposed of at 60 cents on the dollar, and the money received and placed to the credit of H. E. Brooks in the bank; that J. W. Brooks presented the certificate to H. E. Brooks, and H. E. Brooks said to J. W. Brooks that he (J. W. Brooks) did not have any authority to sell the bonds, and that he would not accept the certificate; and that J. W. Brooks then pinned the certificate to the note where the bonds had been pinned previously as collateral. Witness was shown Exhibit B, the certificate of deposit for $5,426.46, issued December 22, 1917, in favor of H. E. Brooks, and said he did not know whether it was the same certificate which was originally presented to H. E. Brooks or not. Witness was permitted to testify, over apt objection made by counsel for appellees, concerning the disposition and settlement made of the bonds owned by appellant and other bonds of the same series. Witness was permitted to testify, over objections made by counsel for appellees, to a conversation he had with J. W. Brooks, in which, he testified, he told J. W. Brooks that he ought to fix up with H. E. Brooks in some way, and J. W. Brooks said: "I would be willing to fix up my share if the bank will fix up their share."

Appellant, H. E. Brooks, testified that he purchased United Flour Mills bonds in the amount of $9,000. Witness was asked if he ever authorized the sale of said bonds, to which objection was made that it was immaterial, unless it was shown that J. W. Brooks sold the bonds, and in that event, it would be a personal transaction, concerning which witness would be incompetent to testify, under Section 4604. The court sustained the objection.

Mrs. Ellen Brooks, wife of appellant, testified that she was present with her husband at the bank "at the time there was a conversation between my husband and J. W. Brooks, in which

I took no part;'' that appellant asked J. W. Brooks what he was going to do about these bonds, and appellant said, ''You know, Will, I wouldn't have bought them, had you not guaranteed,—had they not been guaranteed by the Continental & Commercial Bank of Chicago,'' and J. W. Brooks said, ''Yes, I told you that,—I thought they were good;'' that her husband said, ''What are you going to do about it?'' and J. W. Brooks said, ''Well, I will pay my half, if the bank will pay their half.'' Previously, J. W. Brooks said, ''We will see what we can do about it.'' They were talking about the United Flour Mills Company's bonds that H. E. Brooks had purchased.

E. P. Eastman, a wholesale furniture dealer, testified that he was interested in two banks in Burlington; that he was familiar with the manner in which the United Flour Mills Company was wound up; that he was one of the committee of the bondholders that took hold of the affairs of the company when the company became insolvent; that he was one of the bondholders' protective committee of the National Flour Mills Company; that a large majority of the bonds of the United Flour Mills Company were deposited with the committee, and they foreclosed the mortgage on the property, and bought the property in, held it for some time, and disposed of it, and distributed the proceeds to the bondholders; that there was realized about 60 per cent; that none of the bonds were guaranteed; that he (Eastman) bought his bonds from the Continental & Commercial Trust & Savings Bank of Chicago. Witness was asked if, at the time he purchased his bonds, anything was said about a guarantee. Objection to the question was made and sustained. The answer was taken down in the record that:

''They did not guarantee them. Why, I know there was nothing said about the bank guaranteeing. The bank never guarantees.''

The answer was stricken, on motion of appellees' counsel. Witness was asked whether the bonds would have been good for their face value if they had been guaranteed by the Continental & Commercial Trust & Savings Bank of Chicago. Objection was interposed and sustained, but the answer was permitted to appear in the record. The answer was, ''They would have been good if the Continental Bank guaranteed them.''

IV.   The competent evidence falls far short of establishing the allegations of the petition necessary to be proved to make out the essential elements of the case to entitle recovery.   There is no competent evidence in the record that J. W. Brooks acted for H. E. Brooks, any further than to give him brotherly counsel and advice as to buying the bonds.   There is no evidence to show that J. W. Brooks made any statement as to the quality or value of the bonds, except that he ''thought they were good.''  There is no evidence at all to show that the bonds were not worth their face value at the time they were purchased.   There is no evidence in the record showing whether, in fact, the particular bonds purchased by appellee were or were not guaranteed by the Continental & Commercial Bank; much less is there any evidence showing that J. W. Brooks knew that the bonds in question were not guaranteed by the Continental & Commercial Bank, if in fact they were not.   The evidence does not show that J. W. Brooks had anything to do with the sale of the bonds held by appellant.   It appears from the certificate of deposit issued to appellant that the funds realized from the disposition of the bonds held by appellant were deposited in the bank, and the inference would be that the bank, which held the bonds as collateral for payment of the $4,500 note executed by appellant to the bank, and not J. W. Brooks personally, handled the transaction.

We find no reason to disturb the judgment of the court below, and it is affirmed.—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.